# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
February 17, 2010 Session

## STATE OF TENNESSEE v. ASO HASSAN NEJAD A.K.A. DIAKO NEJAD AND AKO HASSAN NEJAD

**Direct Appeal from the Criminal Court for Davidson County**
No. 2007-B-1748      Cheryl Blackburn, Judge

No. M2009-00481-CCA-R3-CD - Filed September 14, 2010

Brothers Ako Hassan Nejad and Aso Hassan Nejad were found guilty of conspiracy to commit first degree murder, a Class A felony, and each received a twenty-five-year sentence as a Range I, standard offender. Ako Nejad was also found guilty of attempted second degree murder, a Class B felony, and received an additional consecutive sentence of twelve years. On appeal, the defendants claim that: the evidence was insufficient to support their convictions; their indictments were insufficient; a mistrial should have been declared after a witness testified that one of the brothers was a gang member; certain inculpatory evidence was improperly admitted; newly discovered evidence discredits the State's theory of motive; and their sentences were excessive. We reject each of these claims and affirm their convictions and sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Brett M. Gipson (on appeal) and Dumaka Shabazz (at trial), Nashville, Tennessee, for the appellant, Aso Hassan Nejad, a.k.a. Diako Nejad.

David M. Hopkins (on appeal) and Paul Walwyn (at trial), Nashville, Tennessee, for the appellant, Ako Hassan Nejad.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Robert E. McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

On August 4, 2006, the defendants and several other individuals gathered at Paragon Mills Park for the purpose of retaliating against two individuals, Darion Coleman and an individual known only as "Germaine," who had robbed defendant Aso Nejad ("Aso") of $1500, during a drug deal. Members of the group, which included the defendants, Bushra Salih, Nechirvan Yahya, and a few others, made phone calls to the intended victims, setting them up to be ambushed under the guise of arranging a further drug deal. After making the necessary arrangements, the group went to a parking lot at Edwin Warner Park, the location of the attempted ambush. Defendant Ako then instructed the group that when the intended victims arrived, he was going to "take out" the driver, Salih was to "take out" the front passenger, and Defendant Aso and Yahya were to "take out" anyone else, whether they were in the back seat or in a separate vehicle. Each of those four conspirators armed themselves. Salih waited, alone, in a car for the intended victims while the other three conspirators waited behind some trees. Two other group members served as lookouts.

The attempted ambush was foiled when a Metro park ranger spotted Salih sitting in the car and pulled up to investigate. After inquiring what Salih was doing, alone, in the park and whether he had any contraband, the officer asked Salih to turn off his engine, and began to get out of his vehicle. Salih responded by attempting to flee in his vehicle. As the officer pursued him, gunshots started coming at him. Salih's car soon swerved off the road into a ditch, and Salih fled into a wooded area. When the officer exited his patrol car to pursue, he noticed multiple bullet holes in the vehicle, including one that was only a foot and a half from where his head had been located. The officer discontinued the pursuit. Several hours later, Salih was taken into custody by law enforcement.

Tracing the license plate on the abandoned vehicle led police to Defendant Ako. Conducting interviews, following forensic leads, and searching various cell phone records eventually led police to Defendant Aso and the remaining co-conspirators.

On July 14, 2008, the two defendants were tried for conspiracy to commit first degree murder against Darion Coleman and "Germaine." Defendant Ako was also tried for attempted second degree murder for allegedly shooting at the Metro park ranger during Salih's escape. Following a trial that included eyewitness testimony and forensic evidence, both defendants were found guilty of conspiracy, and Defendant Ako was found guilty of attempted second degree murder. At a sentencing hearing held on September 2, 2008, Defendant Ako was sentenced to a twenty-five-year term for the conspiracy conviction and to a consecutive twelve-year sentence for the attempted murder, and Defendant Aso was sentenced to a twenty-five-year term for his conspiracy conviction. This appeal follows.

-2-

**Analysis**

On appeal, both defendants argue that: the evidence was insufficient to support their convictions; they were sentenced improperly; their indictments were insufficient; and the trial court should have declared a mistrial. Defendant Ako also argues that the trial court erred in admitting evidence of his prior citation for gambling and that the trial court should have granted a new trial based on newly discovered evidence. None of these contentions has merit.

**I.**

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence, *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978), nor may this court substitute its own inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). The trier of fact, not this court, resolves questions concerning the credibility of the witnesses. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

Both defendants contend that their convictions for conspiracy to commit first degree murder were supported only by the uncorroborated testimony of their accomplices. Defendant Ako also contends that no evidence was introduced to support his conviction for attempted second degree murder.

In order to sustain a conspiracy conviction, Tennessee Code Annotated section 39-12-103(a) requires the State to prove that: "two or more people, each having the culpable mental

state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one or more of them will engage in conduct which constitutes such offense." To prove the existence of a conspiratorial relationship, the State may show that a "mutual implied understanding" existed between the parties. *State v. Shropshire*, 874 S.W.2d 634, 641 (Tenn. Crim. App. 1993). The conspiracy need not be proved by production of an official or formal agreement, in writing or otherwise. *Id.* The conspiracy may be demonstrated by circumstantial evidence and the conduct of the participants while undertaking illegal activity. *Id.* The very concept of a conspiracy connotes some harmonization of design, not equal participation in every individual component of every criminal offense. *Id.* Additionally, the remaining pertinent portion of this statute provides that "[n]o person may be convicted of conspiracy to commit an offense, unless an overt act in pursuance of the conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired." T.C.A. § 39-12-103(d).

An accomplice is a person who "knowingly, voluntarily, and with common intent with the principal offers to unite in the commission of a crime." *Prince v. State*, 529 S.W.2d 729, 732 (Tenn. Crim. App. 1975) (citing *Clapp v. State*, 30 S.W. 214, 216 (Tenn. 1894); *Letner v. State*, 512 S.W.2d 643 (Tenn. Crim. App. 1974)). Convictions may not be based solely upon the uncorroborated testimony of accomplices. *See State v. Robinson*, 971 S.W.2d 30, 42 (Tenn. Crim. App. 1997). However, Tennessee law requires only a modicum of evidence in order to sufficiently corroborate such testimony. *See State v. Copeland*, 677 S.W.2d 471, 475 (Tenn. Crim. App. 1984). More specifically, precedent provides that:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

*State v. Griffis*, 964 S.W.2d 577, 588-89 (Tenn. Crim. App. 1997) (quoting *Sherrill v. State*, 321 S.W.2d 811, 815 (Tenn. 1959)). In addition, our courts have stated that:

> The evidence corroborating the testimony of an accomplice may consist of direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. The quantum of evidence necessary to corroborate an accomplice's testimony is not required to be sufficient enough to support

the accused's conviction independent of the accomplice's testimony nor is it required to extend to every portion of the accomplice's testimony. To the contrary, only slight circumstances are required to corroborate an accomplice's testimony. The corroborating evidence is sufficient if it connects the accused with the crime in question.

*Griffis*, 964 S.W.2d at 589. Furthermore, the question of whether an accomplice's testimony has been sufficiently corroborated is for the jury to determine. *See id.* at 588; *State v. Maddox*, 957 S.W.2d 547, 554 (Tenn. Crim. App. 1997).

When viewed in the light most favorable to the State, sufficient evidence was presented for a rational trier of fact to find beyond a reasonable doubt that Defendant Ako was guilty of attempted second degree murder. The record shows that on the night of August 4, 2006, a Nashville Metro Park Police officer was on patrol in Edwin Warner Park when he encountered Bushra Salih in the defendant's car. At the time, Defendant Ako was armed and hiding nearby. Because Defendant Ako and the officer had previously encountered each other, the officer testified that he and the defendant could recognize each other by sight. The testimony at trial reflected that when Salih fled the scene in the defendant's car, the officer followed in pursuit and that Defendant Ako fired at least eight rounds at the officer. Bullets hit the officer's patrol vehicle in multiple places, including the trunk lid, right front tire, and the light bar located about a foot and a half from the officer's head. The defendant argues that there was no evidence that he fired the shots, but Salih testified that the defendant told him that he shot at the officer to assist in the getaway. The State also presented the defendant's cellular telephone records as evidence showing calls placed from his phone were processed by a cellular tower at Edwin Warner Park. The evidence in the record was sufficient to sustain Defendant Ako's conviction for attempted second degree murder.

Sufficient evidence was also provided to support both defendants' convictions for conspiracy to commit first degree murder. The State demonstrated that the defendants had a motive to kill their intended victims because Defendant Aso had been robbed of $1500, in a drug deal gone bad with the intended victims. Defendant Ako told Salih that the defendants intended to retaliate against the men who robbed Defendant Aso. The record also reflects that Defendant Ako recruited others to participate in the retaliation and that he directed the activities of those assembled. He orchestrated a series of telephone calls to the intended victims to set up an alleged drug deal. He gave Delosh Ahmed a phone number and directed Ahmed to arrange for the deal at Edwin Warner Park. Defendant Ako also made clear to the participants that a drug deal was not going to take place. The defendants supplied the participants with weapons from a duffel bag that contained several handguns and a rifle.

The conspirators gathered at the park, and Defendant Ako laid out a plan to "take out"

the intended victims. Defendant Ako said he was going to "take out the driver" and directed Salih to "take out" the passenger. Others were the lookout for the group and were set to inform the defendants when the intended victims arrived at the park. The participants were dressed in black and put on gloves provided by Defendant Aso. They hid behind trees in the park while Salih sat in Defendant Ako's car, waiting for the intended victims. The officer interrupted the conspiracy when he encountered Defendant Ako's car. Defendant Ako then fired shots upon the officer's patrol vehicle while he pursued Salih.

Independent evidence, in the form of cellular telephone records, was presented indicating that the conspirators were at the park. The defendant's vehicles were also found in the park on the night of the shooting. One of the intended victims told police that he was near the area of the shooting on that night. The intended victim also told police that he had participated in a robbery of Defendant Aso before the night of the shooting. The State also offered testimony that the police recovered a duffle bag of weapons from Defendant Ako's automobile, a loaded rifle next to a tree at the crime scene, and a loaded handgun at the park.

Here, the defendant's convictions were not based solely on the uncorroborated testimony of an accomplice. The evidence connected the defendants with the commission of the crime independently of the accomplices' testimony. Therefore, the defendants are not entitled to relief on this issue.

## II.

Next, the defendants argue that the indictment did not state with particularity the overt act on which the conspiracy to commit first degree murder in count one is based. They claim that this denied them notice of the offense and denied them a fair trial. An indictment need not conform to traditionally strict pleading requirements. *See State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997). As a general matter, an indictment "must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. . . ." T.C.A. § 40-13-202. It is well-settled that an indictment must provide sufficient information: "(1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." *Hill*, 954 S.W.2d at 727. When the indictment or presentment fails to fully state the crime, all subsequent proceedings are void. *State v. Morgan*, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979).

The offense of conspiracy is committed if two or more people, each having the culpable mental state required for the offense that is the object of the conspiracy and each

acting for the purpose of promoting or facilitating commission of an offense, agree that one or more of them will engage in conduct that constitutes the offense. T.C.A. § 39-12-103(a). No person may be convicted of conspiracy to commit an offense unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired. T.C.A. § 39-12-103(d).

Here, the indictment properly asserted all essential elements of the offense of conspiracy to commit first degree murder, including that the defendants committed an overt act by attempting to "entice" the intended victims to the park with a purported drug transaction for the purpose of killing them. The language of the indictment clearly alleged the required mental state for the conspiracy and conformed with the requirements of the statute in alleging that the defendants committed an overt act in pursuance of the conspiracy. The indictment asserted all the essential elements of the conspiracy offense.

## III.

The defendants further argue that the trial court should have declared a mistrial following the testimony of a police sergeant. The sergeant was asked how he gained knowledge about going to Defendant Ako's residence, and he mentioned that an officer that now works in the gang unit was scrolling thtough something when the trial court interrupted his testimony and told the jury to disregard his comment. The defendants did not object at the time or move for a mistrial, but they now contend this testimony implied that the defendant was a gang member.

The determination of whether to grant a mistrial rests within the sound discretion of the trial court. *State v. Smith*, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. *State v. Reid*, 91 S.W.3d 247, 279 (Tenn. 2002). The burden of establishing the necessity for mistrial lies with the party seeking it. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). No abstract formula should be mechanically applied in making this determination, and all circumstances should be taken into account. *State v. Mounce*, 859 S.W.2d 319, 322 (Tenn. 1993).

The State argues that the defendants have waived this issue because they did not object or move for a mistrial during trial. Specifically, the State cites Tennessee Rule of Appellate Procedure 36(a), which provides that no relief be granted to a party who failed to take whatever action reasonably available to prevent or nullify the harmful effect of an error. As part of our review, we closely examined the testimony of the sergeant and found that he did not state that the defendant was a gang member. He was merely explaining that at the time of the investigation, an officer that worked in the same unit was with him but that this officer was now a detective in the department's gang unit. The defendants have not

demonstrated that they were prejudiced by the statement, and the trial court immediately moved to instruct the jury to disregard the statement. The defendants are not entitled to relief on this issue.

## IV.

Defendant Ako claims that the trial court abused its discretion when it allowed the State to introduce testimony regarding his prior citation for gambling and interaction with the officer that he shot at on the night of the crimes. He asserts that this testimony was unfairly prejudicial to his defense. We disagree.

The record reflects that before the trial court permitted the testimony regarding the prior gambling citation, it held a jury-out hearing pursuant to Tennessee Rule of Evidence 404(b). Based upon the proof offered at the hearing, the trial court determined that a material issue, other than conduct conforming with a character trait, existed in that the testimony related to the defendant's possible "motive or intent." The court also found that the probative value of the evidence was not outweighed by the danger of unfair prejudice. The trial court followed the procedure set forth in Rule of Evidence 404(b) and did not abuse its discretion in admitting the evidence.

## V.

Next, Defendant Ako argues that the trial court should have granted his motion for new trial based upon his "newly discovered evidence" that contradicts the State's theory that he was trying to kill the officer in the park patrol vehicle because of a prior citation for gambling. A motion for new trial "shall be made . . . within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory, and the time for filing may not be extended. *See* Tenn. R. Crim. P. 45(b); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). The thirty-day provision is jurisdictional, and an untimely motion is a nullity. *Dodson*, 780 S.W.2d at 780. It deprives the appellant of the opportunity to argue on appeal any issues that should have been raised in the motion for new trial. *Martin*, 940 S.W.2d at 569. Furthermore, the untimely filing of a motion for new trial does not toll the time for filing a notice of appeal; thus, an untimely motion for new trial will also result in an untimely notice of appeal. *See State v. Davis*, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987). Unlike the untimely filing of the notice of appeal, this court does not have the authority to waive the untimely filing of a motion for new trial. *See* Tenn. R. App. P. 4(a); *State v. Givhan*, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980). However, this court, in its discretion, may take notice of plain error which affects a substantial right of the defendant where it may be necessary to do substantial justice. Tenn. R. Crim. P. 52(b); *State v. Johnson*, 980 S.W.2d

414, 418 (Tenn. Crim. App. 1998). Here, the defendant's motion was untimely because it was filed over a month after the order of sentence was entered. However, the trial court did review the motion.

In denying the motion for new trial, the trial court found that the defendant had failed to present "newly discovered evidence." The trial court noted that the citation was not newly discovered evidence because the defendant received the citation and would have known about it. Trial counsel acknowledged that he knew about the citation because he represented the defendant on the citation.

The newly discovered evidence was the testimony of the officer that actually issued the defendant's citation for gambling. However, the testimony is not inconsistent with the testimony of the officer that testified at trial. The appearance is that the defendant wanted to impeach the testimony of the officer from trial because the officer that issued the citation said there were a large number of officers and individuals present when the citations were issued. However, we conclude that the trial court did not abuse its discretion in denying the motion for new trial because the evidence is not newly discovered; the motion for new trial was not timely filed; and the defendant has not established the existence of plain error.

VI.

Next, the defendants argue that they were sentenced improperly. Defendant Ako argues that his sentence is excessive and that the trial court improperly imposed consecutive sentencing. Defendant Aso argues that the trial court erred in considering an enhancement factor and in failing to consider a mitigating factor.

When a defendant challenges the length, range, or manner of service of a sentence, this court conducts a *de novo* review of the record with a presumption that the determinations made by the sentencing court are correct. T.C.A. § 40-35-401(d) (1997). If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after duly considering and weighing the factors and principles set out under the sentencing law, and its findings are adequately supported by the record, then we may not disturb the sentence even if we would have preferred a different result. *State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000). However, if the trial court failed to comply with the statutory guidelines, we must review the sentence *de novo* without a presumption of correctness. *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997). The defendant bears the burden of proving that the sentence is improper. *See* T.C.A. § 40-35-401, Sentencing Commission Comments.

A trial court must impose a sentence within the applicable range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat

violent offender. T.C.A. § 40-35-210(c). The trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act,] as set forth in [Tennessee Code Annotated sections] 40-35-102 and -103." *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (quoting T.C.A. § 40-35-210(d)). The trial court is not required to begin with a presumptive sentence subject to increase and decrease on the basis of enhancement and mitigating factors. *Carter,* 254 S.W.3d at 346. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210(b), to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in [sections] 40-35-113 and 40-35-114; (6) any statistical information provided by the AOC as to sentencing practices for similar offenses in Tennessee; and (7) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

The trial court's weighing of various mitigating and enhancement factors is left to its sound discretion, as the factors are merely advisory. *Carter*, 254 S.W.3d at 345.

Here, both defendants were convicted of conspiracy to commit first degree murder, a Class A felony. Additionally, Defendant Ako was convicted of attempted second degree murder, a Class B felony. It was stipulated that the defendants were Range I offenders with a sentencing range from fifteen to twenty-five years for the Class A felony. The range for Defendant Ako's B felony was eight to twelve years. T.C.A. § 40-35-112(a)(1)-(2).

Defendant Ako was subject to the enhancement factor for a previous history of criminal convictions in addition to those necessary to establish the range. The trial court found that he had a prior felony conviction for facilitation of aggravated robbery in 2005, and felony convictions for possession of drugs for resale in two Tennessee counties. Additionally, he had a conviction for misdemeanor possession of a controlled substance. The trial court also considered that he was a leader in the commission of an offense involving two or more criminal actors based on the testimony that he gave the orders to the conspirators. The trial court also considered that the defendant employed a firearm during the offenses. The trial court stated that the defendant came from a good family, was college educated, and had been a hard worker, but it did not place any mitigating weight on those factors. The trial court sentenced the defendant to the maximum in the range for both offenses.

Defendant Aso was also sentenced to the maximum in his range, and the trial court

applied the enhancement factor that he was a leader in the commission of an offense involving two or more criminal actors. T.C.A. § 40-35-114(2). The trial court applied this factor because the defendant brought the weapons to the park and transferred them to Defendant Ako. The trial court also applied the enhancement factor that he had previously failed to comply with conditions involving release into the community. Defendant Aso had prior violations of probation following adjudications of juvenile delinquency. The trial court also considered that the defendant possessed or employed a firearm during the commission of the offense and considered the defendant's family background but declined to give it much weight in mitigation.

Pursuant to the Tennessee Supreme Court decision in *State v. Carter*, the trial court is free to select any sentence within the applicable range so long as it is consistent with the purposes and principles of sentencing. *Carter*, 254 S.W.3d at 343. As the court stated in *Carter*, we do not think the trial court departed from the Sentencing Act so as to rebut the presumption of correctness. The trial court considered all of the criteria set out in section 210(b); it imposed a sentence within the applicable range; it set forth its reasons for imposing the sentence that it did; and the relevant findings are adequately supported by the record. Therefore, we affirm the length of the imposed sentences.

Defendant Ako also contests the imposition of consecutive sentences. Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of following statutory criteria applies:

(1)    [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2)    [t]he defendant is an offender whose record of criminal activity is extensive;

(3)    [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)    [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)    [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual

activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)     [t]he defendant is sentenced for an offense committed while on probation; or

(7)     [t]he defendant is sentenced for criminal contempt.

T. C. A. § 40-35-115(b).

If the court concludes the defendant is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4), it must make two further determinations in addition to applying general sentencing principles. *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). First, it must find an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). However, such specific factual findings are unnecessary for the other categories of Tennessee Code Annotated section 40-35-115(b). *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

Here, the trial court imposed consecutive sentences because Defendant Ako committed the offenses while he was on probation for facilitation of aggravated robbery, pursuant to Tennessee Code Annotated section 40-35-115(b)(6). The trial court also determined that the defendant was a dangerous offender whose behavior indicates little or no regard for human life and had no hesitation about committing a crime in which the risk to human life is high. The trial court considered the requisite *Wilkerson* factors and found that the defendant had been "in possession of an arsenal" and, before shooting at a police officer, had set up individuals to be executed. The trial court stated that the defendant's conduct necessitated a lengthy sentence to protect the public from further serious criminal conduct. Our review of the record reflects that the trial court considered the principles of sentencing, as well as all relevant facts and circumstances, and made sentencing decisions within its discretion. The defendants are not entitled to relief on this issue.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE